UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN ROBERT GIDDING,<br><br>   Plaintiff,<br><br>   v.<br><br>ZURICH AMERICAN INSURANCE COMPANY, et al.,<br><br>   Defendants. | Case No. 15-cv-01176-HSG<br><br>**ORDER GRANTING MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE**<br><br>Re: Dkt. No. 8 |

## I.   INTRODUCTION

This a contract and fraud action originally brought by Plaintiff John Robert Gidding in state court against Defendants Zurich American Insurance Company ("Zurich"), Thomas E.C. Smith, Terese Smith, Glendonbrook Pty Ltd. ("Glendonbrook"), DS Contracts Pty Ltd., Daly Smith Pty Ltd., Daly Smith Corporation (Aust.) Pty Ltd., Daly Smith Corporation (Management Services) Pty Ltd., and various Doe Defendants (collectively, "Defendants").[1] Not. of Removal, Ex. A ("Complaint"), Dkt. No 1-1. Zurich removed the action to this Court on March 12, 2015. Not. of Removal, Dkt. No. 1. Gidding alleges the following causes of action: (1) Filing False and Fraudulent Information Returns with the United States, (2) Intentional Interference with Contractual Relations, (3) Inducement of Breach of Contract, (4) Breach of Contract (against Smith Defendants only), and (5) Civil Conspiracy. *See generally* Compl. On March 19, 2015, Zurich moved to dismiss the Complaint and to specially strike the Second, Third, Fourth, and Fifth Causes of Action under California's "anti-SLAPP" statute (California Code of Civil Procedure §

---

[1] Plaintiff refers to the following entities as "SMITH": Thomas E.C. Smith, Terese Smith, Glendonbrook Pty Ltd., DS Contracts Pty Ltd., Daly Smith Pty. Ltd., Daly Smith Corporation (Aust.) Pty Ltd., and Daly Smith Corporation (Management Services) Pty Ltd.  Compl. ¶ 11. Accordingly, any reference to the Smith Defendants in this Order includes these entities, unless otherwise noted.

425.16, *et seq.*) ("Motion"). Dkt. No. 8. The Court finds this matter suitable for resolution without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b). Having carefully considered the arguments presented in the parties' written submissions, the Court GRANTS Zurich's motion to dismiss and special motion to strike for the reasons that follow.

## II.   REQUEST FOR JUDICIAL NOTICE

As an initial matter, Zurich filed a Request for Judicial Notice ("RJN") at the same time it filed the instant motion to dismiss and special motion to strike. Dkt. No. 9. The Court may take judicial notice of documents "not subject to reasonable dispute." Fed. R. Evid. 201(b). Proceedings in other courts, including state courts, are the proper subject of judicial notice if those proceedings "have a direct relation to the matters at issue." *Tigueros v. Adams*, 658 F.3d 983, 987 (9th Cir. 2011) (internal citations omitted). Zurich asks the Court to take notice of pleadings and orders in the state lawsuits that form the basis of the instant suit. *See* RJN, Exs. A-K. These documents contain factual findings, arguments, and legal conclusions. *See id.* To the extent the documents contain factual findings made by a state court or allegations by one of the parties, the Court declines to take notice of those facts for the truth of the matters they assert. *See Lasar v. Ford Motor Co.*, 399 F.3d 1101, 1117 n.14 (9th Cir. 2005) (declining to take judicial notice of findings made in a state court proceeding "because [defendants were] offering the factual findings contained in the order for the purpose of proving the truth of the factual findings contained therein[]"); *Wyatt v. Terhune*, 315 F.3d 1108, 1114 n.5 (9th Cir. 2003) ("Factual findings in one case ordinarily are not admissible for their truth in another case through judicial notice."). To the extent the documents explain the procedural posture of the current case, including the nature of the orders entered by the previous courts in the underlying decisions, the Court takes judicial notice of the documents attached to Zurich's RJN. *See Tigueros*, 658 F.3d at 987 (taking judicial notice of state court documents because they were "directly related" to the posture of the case).

### III.  RELEVANT FACTS[2]

Because the facts underlying this dispute are somewhat involved, the Court will discuss them at some length. This case is the latest in a number of lawsuits filed by Gidding, and entities with which he is associated, regarding a contract dispute between Gidding, Glendonbrook, and the Smith Defendants related to a wine distribution agreement.[3] On October 9, 2007, Gidding filed an action for defamation, also alleging a contract cause of action, in San Francisco Superior Court against Defendants Glendonbrook (named there as "Glendonbrook Wines Pty Ltd.") and Thomas Smith, among others. RJN, Ex. B (the "Glendonbrook Action"), Dkt. No. 9-2; Compl. ¶ 25. The Glendonbrook Action was tried in February 2010 resulting in a jury verdict of $1,800,000 in favor of the defendants on their cross-complaint. Compl. ¶ 30. The Tenax Law Group PC ("Tenax"), Joseph Salama, and John Schilt represented Gidding and the other corporate plaintiffs in the Glendonbrook Action. *Id.* ¶ 27.

On January 21, 2011, Gidding filed a malpractice action against Tenax, Schilt, and Salama based on their representation in the Glendonbrook Action. Compl. ¶ 34; RJN, Ex. C (the "Malpractice Action"), Dkt. No. 9-3. It is undisputed that American Guarantee & Liability Insurance Company ("American"), a Zurich subsidiary, was the insurer for two of the named defendants in the Malpractice Action, Tenax and Schilt. Mot. at 9. Zurich, on behalf of American, agreed to settle Gidding's claims in the Malpractice Action for $100,000. Compl. ¶¶ 35, 37; *see* RJN, Ex. D, Dkt. No. 9-4. Salama agreed to pay Gidding $25,000 to settle the Malpractice Action. *Id.* ¶ 37. All defendants agreed to make the settlement monies payable to "John Gidding and Midshore Marketing LP." *Id.* Gidding signed the settlement agreement on September 19, 2011, Compl. ¶ 38, Salama signed it on September 20, 2011, *id.* ¶ 39, and Schilt, on behalf of himself and Tenax, signed it on September 26, 2011, *id.* ¶ 41. Gidding contends, and

---

[2] This case relates to several state court lawsuits and at least one appeal, all of which have already been resolved. For purposes of this Order, the Court does not restate the facts related to each of the underlying suits, but instead focuses on the facts relevant to this case, accepting the facts pled in the Complaint as true.

[3] Glendonbrook is a presumed Australian corporation owned by Defendants Terese and Thomas Smith, who live in Australia. Compl. ¶¶ 4-6.

Zurich does not dispute, that Schilt and Tenax did not provide him with a signed copy of the agreement. *Id.* ¶ 41. In compliance with the settlement agreement, Zurich, on behalf of American, issued a $100,000 check payable to "John Gidding and Midshore Marketing LP" in September 2011, but sent the check to their "agents or affiliates," not Gidding, and instructed them to cash the check. *Id.* ¶ 61(a), (b). Also in September 2011, Glendonbrook, as a judgment creditor from the previous Glendonbrook Action, filed a notice of lien on the proceeds from Gidding's settlement of the Malpractice Action in the amount of $488,696.96. *Id.* ¶ 40.

On October 30, 2011, after Gidding had notice of Glendonbrook's lien, but having never received a signed copy of the settlement agreement from Zurich, Gidding "renounced" the settlement agreement.[4] *Id.* ¶ 43. The next day, Schilt, Tenax, and Salama moved the court in the Malpractice Action to enforce the settlement agreement. *Id.* ¶ 44. On December 12, 2011, the motion was denied. *Id.* ¶ 45. However, on May 25, 2012, the court reversed itself and (1) ordered enforcement of the settlement agreement, (2) entered a judgment of dismissal based on the settlement agreement, and (3) directed the defendants to place their respective portions of the settlement award into client trust accounts. RJN, Ex. D at 2-3, Dkt. No. 9-4; Compl. ¶ 46. The same order recognized Glendonbrook's judgment lien against Gidding's settlement award in the Malpractice Action, and directed the defendants to release the settlement funds held in their client trust accounts only upon the occurrence of certain events. RJN, Ex. D at 2-3, Dkt. No. 9-4. One of those scenarios contemplated an appeal of the court's order directing enforcement of the settlement, and included the following direction:

> To complete defendants' performance under the Settlement Agreement, the agreed settlement amount ($125,000.00) shall be disbursed, $25,000.00 by counsel for defendant SALAMA and $100,000.00 by counsel for defendants SCHILT and TENAX upon the occurrence of one of the following events, as follows:
>
> . . .

---

[4] In his Complaint, Gidding alleges that he renounced the settlement agreement in the Malpractice Action in October 2010. *Id.* ¶ 43. The Court believes this date is a typographical error. This allegation comes between allegations describing events in September 2011 and December 2011. Compl. ¶¶ 42-45. Documents attached to Gidding's opposition indicate that Gidding's attempt to rescind the settlement agreement occurred in 2011 and not in 2010. *See*, *e.g.*, Declaration of John Gidding ("Gidding Decl.") ¶ 8, Ex. E, Dkt. No. 20-5.

4

> If no timely appeal is filed from this judgment of dismissal, or if an appeal is filed but the appeal is dismissed or the judgment of dismissal is affirmed, and that decision has become final, to the Order of GLENDONBROOK, as directed by its counsel Robert E. White in writing, with notice of the same to GIDDING, MIDSHORE, and counsel for defendants, at their current addresses of record in this action, or such other addresses as they specify in writing . . . ."

RJN, Ex. D, Dkt. No. 9-4.

On January 10, 2013, Gidding appealed the May 25, 2012 order. Compl. ¶ 47. On June 10, 2014, the California Court of Appeal affirmed that order in its entirety, including the entry of dismissal. *Id.* ¶ 49; RJN, Ex. G, Dkt. No. 9-7 at 16. A few months later, in August 2014, Zurich, on behalf of Schilt and Tenax, paid the Smith Defendants $100,000. Compl. ¶ 61(e).

On or after September 26, 2011, Zurich filed a form 1099-MISC 2011-A information return with the Internal Revenue Service (IRS) declaring its $100,000 payment to Gidding. *Id.* ¶¶ 42, 61(c). It is unclear from the Complaint whether this return was filed before or after Zurich made the $100,000 payment to the Smith Defendants. In any event, according to Gidding, Zurich never sent him a copy of form 1099-MISC 2011-B, showing Gidding's receipt of $100,000 from Zurich. *Id.* ¶¶ 61(d), (h). Subsequently, the IRS assessed Gidding $25,368.87 in federal taxes and revoked his 2013 federal income tax return. *Id.* ¶ 64. Additionally, the IRS garnished Gidding's Social Security payments, allegedly in satisfaction of the taxes assessed to Gidding. *Id.* ¶¶ 50, 65.

Zurich moves to dismiss all of Gidding's causes of action on the grounds that he (1) fails to state a claim under Federal Rule of Civil Procedure 12(b)(6); and (2) is collaterally estopped from attacking the validity of the underlying settlement agreement. (Mot. at ii.) Additionally, Zurich seeks to strike Gidding's Second, Third, Fourth, and Fifth Causes of Action under California's "anti-SLAPP" statute (Cal. Code Civ. P. § 424.16, *et seq.*). (*Id.*)

### IV. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant

has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although courts do not require "heightened fact pleading of specifics," *Twombly*, 550 U.S. at 570, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," *id*. at 555. The plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Id.*

Separately, Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Malice, intent, knowledge and other conditions of a person's mind may be alleged generally." *Id.* "[The Ninth Circuit] has interpreted Rule 9(b) to require that allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993) (internal citations and quotation marks omitted).

Furthermore, it is well-settled that claims that "sound in fraud" or those that are "grounded in fraud" must also satisfy the heightened pleading requirements of Rule 9(b). *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (internal quotation omitted). This means that the complaint must allege "the who, what, when, where, and how" of the alleged fraudulent conduct, *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997), and "set forth an explanation as to why [a] statement or omission complained of was false and misleading," *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as recognized by Ronconi v. Larkin*, 252 F.3d 423, 429 & n.6 (9th Cir. 2001).

And, where multiple defendants are accused of fraudulent conduct, the plaintiff must identify the role of each defendant in the alleged fraudulent scheme. See *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) ("Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.").

6

## V. ANALYSIS

### A. Fraudulent Tax Return Claims

Plaintiff's First Cause of Action alleges that Defendant Zurich violated 26 U.S.C. § 7434 when it filed a "false and fraudulent" information return with the United States stating that Zurich paid Gidding $100,000 in 2011. Compl. ¶ 61(c). Additionally, Gidding contends that all Defendants participated in a tax scheme in violation of 26 U.S.C. § 14[42][5] (withholding of tax on foreign corporations), 26 U.S.C. § 7206 (fraud and false statements), and 18 U.S.C. § 371 (conspiracy to commit an offense or defraud the United States). Essentially, Gidding contends that when Zurich paid its portion of the settlement award ($100,000) directly to Glendonbrook, it did not comply with the express terms of the settlement agreement in the Malpractice Action. Additionally, Gidding contends that Zurich committed fraud when it reported this payment to the IRS as income to Gidding.

As discussed below, none of Gidding's accusations meet the heightened pleading requirements for fraud-based causes of action under Rule 9(b), and Gidding fails to plead a cognizable cause of action against any of the Defendants for violating federal tax laws.

### 1. No Private Right of Action Exists Under 18 U.S.C. § 371 or 26 U.S.C. § 7206

To the extent Plaintiff's First Cause of Action alleges violations of 26 U.S.C. § 7206 or 18 U.S.C. § 371, it fails to state a claim upon which relief may be granted. Gidding is precluded from asserting any claims under 18 U.S.C. § 371 because it is a criminal statute that does not create a private right of action. *See Henry v. Universal Technical Inst.*, 559 F. App'x 648, 650 (9th Cir. 2014) (affirming dismissal of 18 U.S.C. § 371 claim alleged in a civil action because statute does not provide a private right of action);[6] *Henry v. Andrews v. Heaton,* 483 F.3d 1070, 1076 (10th Cir. 2007) (violation of 18 U.S.C. § 371 is "not enforceable through a civil action" because it is a criminal statute that does not "provide for a private right of action").

---

[5] The Complaint alleges a violation of "26 U.S.C. § 1422 - *withholding of tax on foreign corporations*," which the Court presumes is a typographical error. *See* Compl. ¶ 63. The correct section of Title 26 of the United States Code relating to the withholding of tax on foreign corporations is Section 1442. *See* 26 U.S.C. § 1442.

[6] Although not precedential, unpublished Ninth Circuit decisions may be considered for their persuasive value. *See Rounds v. Comm'r Soc. Sec. Admin.*, 795 F.3d 1177, 1185 (9th Cir. 2015).

7

Similarly, under 26 U.S.C. § 7206 it is a felony for any person to "[w]illfully make[ ]" or "[w]illfully aid[ ] or assist[ ] in" the making of a fraudulent return or statement under the internal revenue laws. 26 U.S.C. § 7206 (1)-(2). The plain language of the statute identifies it as criminal in nature, and Gidding has not alleged any statutory provision that would permit him to sue Defendants in a civil action under Section 7206. *See Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190 (1994) (noting the Supreme Court has been "quite reluctant to infer a private right of action from a criminal prohibition alone," including "a bare criminal statute") (internal quotation omitted); *see also Ou-Young v. Vasquez,* No. 12-CV-02789-LHK, 2012 WL 5471164, at *5 (N.D. Cal. Nov. 9, 2012) (collecting cases and granting motion to dismiss where civil causes of action were based on criminal statutes because the court "found no authority to support Plaintiff's claim that a private right of action exists under these criminal statutes."). As a result, Plaintiff's purported causes of action under 26 U.S.C. § 7206 and 18 U.S.C. § 371 against all Defendants are DISMISSED WITH PREJUDICE.

### 2. Gidding Fails to State a Claim Under 26 U.S.C. § 1442

Section 1442 of Title 26 states the conditions under which foreign corporations may be taxed. In his Complaint, Gidding asserts that Defendants' pursuit of a "tax scheme" violated § 1442. However, Gidding has not explained how Defendants' actions violated the statute. As a result, Gidding has not met his 12(b)(6) burden of alleging facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

To the extent Gidding contends that Defendants acted unlawfully under 26 U.S.C. § 1442 by assessing income taxes, such a claim would necessarily fail: Defendants are not authorized to tax or otherwise declare an entity exempt from taxation. And if Gidding believes he was assessed a tax erroneously, the appropriate remedy lies in 28 U.S.C. § 1346(a)(1), which entitles a taxpayer to bring a civil action against the government for "recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, . . . or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws[.]" 28 U.S.C. § 1346(a)(1); *see also U.S. v. Clintwood Elkhorn Min. Co.*, 553 U.S. 1, 4 (2008) ("A taxpayer seeking a refund of taxes erroneously or unlawfully assessed or collected may bring an action

against the Government either in United States district court or in the United States Court of Federal Claims"). Section 1346(a)(1) and Supreme Court precedent make plain that Gidding's remedy to recover allegedly unlawfully collected taxes lies in a suit against the United States, which is charged with the duties of collecting and assessing taxes, not against any private entity.

Accordingly, Plaintiff's cause of action under 26 U.S.C. § 1442 against all Defendants is DISMISSED WITH PREJUDICE.

### 3. Gidding Fails to Allege a Violation of 26 U.S.C. § 7434

Under 26 U.S.C. § 7434 it is a civil violation for any person to "willfully" file a fraudulent tax return with the IRS "with respect to payments purported to be made to any other person[.]" 26 U.S.C. § 7434. The statute authorizes the person on whose behalf the fraudulent return was filed to bring a civil action for damages against the person filing the return. *Id.; Katzman v. Essex Waterfront Owners LLC*, 660 F.3d 565, 569 (2d Cir. 2011).

In order to state a claim under 26 U.S.C. § 7434, Gidding must allege: (1) Defendants issued an information return; (2) the information return was fraudulent; and (3) Defendants *willfully* issued the fraudulent information return. *Leon v. Tapas & Tintos, Inc.*, 51 F. Supp. 3d 1290, 1297 (S.D. Fla. 2014); *Katzman*, 660 F.3d 565 at 568 (2d Cir. 2011) ("The private right of action created by § 7434(a) applies only [i]f any person *willfully files* a fraudulent information return.") (emphasis in original) (internal quotation marks omitted).

Gidding has sufficiently alleged that Zurich filed a form 1099-MISC 2011-A with the IRS and Defendants do not dispute that a 1099-MISC 2011-A form is an "information return" under Section 7434. Gidding does not, however, allege that any of Defendants apart from Zurich filed an information return with the IRS, and the Court believes it unlikely that he could ever support such an allegation. With respect to the second factor, Gidding claims that the information in the return was fraudulent because Zurich did not transfer $100,000 to him in 2011, as stated in form 1099-MISC 2011-A. Compl. ¶ 61. These allegations might be adequate to satisfy the pleading standard applied to the first and second elements of a cause of action brought against Zurich under Section 7434. Even assuming these allegations were sufficient as to the first two elements, however, Gidding cannot make the required showing as to the third element.

With respect to the third element under Section 7434, "willful filing" has been held to connote a "voluntary, intentional violation of a legal duty" that requires "intentional wrongdoing." *See Vandenheede v. Vecchio*, 541 F. App'x 577, 580 (6th Cir. 2013) (internal quotations omitted). At the motion to dismiss stage, the complaint "must contain specific allegations supporting the plausible inference" that Defendants "willfully filed false information returns." *Id.* at 580; *Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2012) ("Although 'conditions of a person's mind may be alleged generally,' Fed. R. Civ. P. 9(b), the plaintiff still must plead facts about the defendant's mental state, which, accepted as true, make the state-of-mind allegation plausible on its face.") (internal quotation marks and citations omitted). Gidding's allegations fail to meet this standard. Although the Complaint recites the bare conclusion that Zurich willfully filed a false return, (Compl. ¶ 62), that is insufficient to survive a motion to dismiss under Rule 12(b)(6) and the heightened pleading standards applicable to fraud causes of action under Rule 9(b). Gidding has not alleged facts tending to show that Zurich, or any other Defendant, willfully violated a "legal duty" by, for example, attempting to mislead the government or harass Gidding, the taxpayer. *See e.g. Katzman*, 660 F.3d at 569 (affirming dismissal of a § 7434 claim and citing legislative history explaining that "§ 7434 was enacted to address the fact that [s]ome taxpayers may suffer significant personal loss and inconvenience as the result of the IRS receiving fraudulent information returns, which have been filed by persons intent on either defrauding the IRS or harassing taxpayers[]") (internal quotation marks and citations omitted).

Additionally, under Federal Rule of Civil Procedure 9(b), where there are multiple defendants, Gidding is required to allege with specificity each Defendant's wrongdoing. *Swartz*, 476 F.3d at 764-65. Gidding does not do so, and instead generally pleads "Filing False and Fraudulent Information Returns With the United States" against all Defendants without stating each Defendant's alleged role in the fraudulent scheme.

For these reasons, Plaintiff's First Cause of Action fails to satisfy the pleading standards required by Federal Rules of Civil Procedure 12(b)(6) and 9(b) as to all Defendants. To the extent the First Cause of Action is based on a violation of 26 U.S.C. § 7434, it is DISMISSED WITH LEAVE TO AMEND. In any amended complaint, Gidding must allege particularized facts that

show each named Defendant issued an intentionally false information return, if--and only if-- he can plead such facts in good faith.  And Gidding may not allege violations of 26 U.S.C. §§ 1442, 7206 or 18 U.S.C. § 371, because those claims are DISMISSED WITH PREJUDICE.

### B. Gidding Fails to State a Claim for Intentional Interference with Contractual Relations (Second Cause of Action)

Under California law, a plaintiff asserting a cause of action for interference with contractual relations must show: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990).  Gidding has not alleged that any Defendant acted with the requisite intent to intentionally breach or disrupt the settlement agreements in the Malpractice Action or the Glendonbrook Action.  Moreover, it is not clear that Gidding could ever state such a claim, since all of the actions about which Gidding complains relate to Defendants' *compliance* with the settlement agreements in both the Malpractice and Glendonbrook Actions.  As a result, he has not met his burden under Federal Rule of Civil Procedure 12(b)(6), and the Court therefore GRANTS Defendant's Motion to Dismiss Plaintiff's Second Cause of Action.

### C. Gidding Fails to State a Claim for Inducement of Breach of Contract (Third Cause of Action)

In order to plead a cause of action for "inducement of breach of contract," Gidding must allege all of the elements applicable to an intentional interference claim in addition to asserting an "actual breach," as opposed to a mere "disruption," of a contractual relationship. *Shamblin v. Berge*, 166 Cal. App. 3d 118, 122-23 (1985) (to prove claim of "inducement to breach a contract," plaintiff must prove: "(1) he had a valid and existing contract [with a third party]; (2) [ ] defendant had knowledge of the contract and intended to induce its breach; (3) the contract was in fact breached by the contracting party; (4) the breach was caused by [ ]defendant's unjustified or wrongful conduct; and (5) [ ] damage[s] [were suffered as a result].") (internal citations and quotation marks omitted).  As with his Second Cause of Action, Gidding has not alleged that any Defendant committed any "intentional" act "designed" to induce breach of the settlement

11

agreements in the Malpractice Action or the Glendonbrook Action. Moreover, Gidding has not alleged how either of the asserted contracts has been actually breached, as required in order to plead an actionable claim for Inducement of Breach of Contract. Therefore, the Court GRANTS Defendant's Motion to Dismiss Plaintiff's Third Cause of Action.

### D. Gidding Fails to State a Claim for Civil Conspiracy (Fifth Cause of Action)

Under California law, "[s]tanding alone, a conspiracy does no harm and engenders no tort liability. It must be activated by the commission of an actual tort. A civil conspiracy, however atrocious, does not per se give rise to a cause of action unless a civil wrong has been committed resulting in damage." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 511 (1994) (internal citations and quotation marks omitted).

Gidding claims that Defendants conspired to commit the torts of "filing of false information returns with the United States," "intentional interference with the performance" of a contract, and "inducement of breach of contract." Compl. ¶¶ 98-101. As discussed above, Gidding has not adequately pled any of these claims. Without the "commission of an actual tort," Gidding cannot state a claim for civil conspiracy. *Applied Equip. Corp.*, 7 Cal. 4th at 511.

In addition to alleging tort liability, a plaintiff pleading a cause of action for civil conspiracy must assert "the formation and operation of the conspiracy and damage resulting to plaintiff from an act or acts done in furtherance of the common design." *Id*. Instead of alleging the required common design, Gidding simply states that Defendants' alleged independent actions collectively caused him harm and alleges in a conclusory manner that Defendants were "acting in concert." *See* Compl. ¶¶ 97-101. This is insufficient to state a civil conspiracy claim. In addition, since the Court finds that Gidding's conspiracy allegations related to the Smith Defendants are based on actions taken in furtherance of their constitutional right to petition (see below), and strikes Gidding's conspiracy claim as to them for that reason, it is impossible for Gidding to plead his civil conspiracy cause of action. That is, the Smith Defendants cannot be held liable for a civil conspiracy based on the actions pled in the Complaint. Without the participation of the Smith Defendants, Gidding's civil conspiracy allegations necessarily fail, since it is axiomatic that Zurich could not conspire with itself to harm Gidding. For these reasons, the Court GRANTS

Zurich's Motion to Dismiss Plaintiff's Fifth Cause of Action.

### E. Defendant's Motion to Strike Is Granted as to the Smith Defendants

Zurich moves to strike Plaintiff's Second, Third, Fourth and Fifth Causes of Action as barred under California's anti-SLAPP statute (California Code of Civil Procedure § 425.16, *et seq.*). Under the statute, "strategic lawsuits against public participation" or those that "primarily chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances" are subject to a special motion to strike, unless the Court determines that Gidding has established a probability that he will prevail on the claim or claims. Cal. Code Civ. P. §§ 425.16(a), (b)(1). California's anti-SLAPP statute applies to state claims in federal court. *US ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 970-73 (9th Cir. 1999). A special motion to strike may be addressed to individual causes of action and need not be directed to the complaint as a whole. *Coretronic Corp. v. Cozen O'Connor*, 192 Cal. App. 4th 1381, 1387 (2011).

In making a determination on a special motion to strike, the Court engages in a two-step process. First, the Court decides whether the defendant has made "a prima facie showing that one or more of the causes of action arise from an act in furtherance of the constitutional right of petition or free speech in connection with a public issue." *Id.* at 1388. Once the Court is satisfied that the defendant has met its prima facie burden, it then determines whether the plaintiff has "demonstrated a probability of prevailing on the claims." *Id.* at 1390. A claim is subject to dismissal only where defendant meets its prima facie burden and plaintiff fails to show a probability of success on that claim. *Navellier v. Sletten*, 29 Cal. 4th 82, 88-89 (2002). In ruling on a special motion to strike, the Court may consider "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." *Coretronic*, 192 Cal. App. 4th at 1387.

#### 1. Gidding's Second, Third, Fourth, and Fifth Causes of Action Attack the Smith Defendants' Protected Activity

Statements made in litigation, or in connection with litigation, are protected by Section 425.16 as part and parcel of a party's "constitutional right of petition." *See id.* at 1388. California

13

courts have taken a "fairly expansive view of what constitutes litigation-related activity for the purposes of [S]ection 425.16." *Id*. "[A]ll communicative acts performed by attorneys as part of their representation of a client in a judicial proceeding or other petitioning context are per se protected as petitioning activity by the anti-SLAPP statute." *Cabral v. Martins*, 177 Cal. App. 4th 471, 480 (2009). An attorney's settlement communications regarding pending litigation are made "in connection with an issue under consideration or review by . . . a judicial body or any other proceeding authorized by law" and therefore are protected. *See GeneThera, Inc. v. Troy & Gould Prof'l Corp.*, 171 Cal. App. 4th 901, 908 (2009); *see also* Cal. Code Civ. P. § 425.16(e)(1)-(2).

"When a lawsuit involves both protected and unprotected activity, the court looks to the gravamen of the claims to determine if the case is a SLAPP." *Coretronic*, 192 Cal. App. 4th at 1388. "Determining the gravamen of the claims requires examination of the specific acts of alleged wrongdoing and not just the form of the plaintiff's causes of action." *Id.*

Zurich contends that the Second, Third, Fourth and Fifth Causes of Action all arise from various alleged misstatements and actions made or taken in the course of negotiating settlement agreements in the underlying cases. With respect to Gidding's Second through Fifth Causes of Action, the Court agrees with respect to the Smith Defendants.[7] Those causes of action against the Smith Defendants all rest on Glendonbrook's placement of a lien on Gidding's settlement proceeds and those of his company, MM-Inc., in the Malpractice Action, which resulted in the proceeds being paid directly to Glendonbrook rather than Gidding or MM-Inc. There can be no doubt that Glendonbrook, as a judgment creditor, had the legal right to seek a lien on Gidding's

---

[7] The Court finds that Zurich's actions alleged in the Second, Third, and Fifth Causes of Action are not properly considered "actions taken in furtherance" of a party's constitutional right of petition so as to warrant protection under California's anti-SLAPP statute. Gidding alleges that Zurich's submission of an allegedly fraudulent tax return, its payment of settlement proceeds, and its failure to furnish him with copies of a signed settlement agreement amounted to actionable harm. *See* Compl. ¶¶ 67, 73, 86 & 98. Zurich's submission of routine (and allegedly fraudulent) tax returns is not protected litigation activity within the meaning of the anti-SLAPP statute. *See City of Industry v. City of Fillmore*, 198 Cal. App. 4th 191, 200 (2011) (submission of routine sales tax returns to the State Board of Equalization was "not an act in furtherance of the defendants' constitutional right of petition . . . within the meaning of the anti-SLAPP statute."). Nor has Zurich shown that its purported failure to furnish Gidding with various copies of contracts or tax returns amounts to "protected activity" under the statute. Having already dismissed the Second, Third and Fifth Causes of Action against Zurich, the Court focuses its anti-SLAPP analysis on Gidding's claims against the Smith Defendants.

1  settlement award in the Malpractice Action.  Gidding's attempt to sue any of the Smith

2  Defendants for Glendonbrook's action in this regard clearly interferes with Glendonbrook's right

3  to petition the court.

### 2. Gidding Has Not Produced Evidence Demonstrating a Probability of Prevailing Against the Smith Defendants on His Asserted Causes of Action

Having determined that Second through the Fifth Causes of Action are subject to a special motion to strike as to the Smith Defendants, the Court next examines whether Gidding has satisfied his burden of presenting sufficient evidence showing that he has a probability of prevailing on the merits each of these causes of action.  *Coretronic,* 192 Cal. App. 4th at 1388.  He has not.

#### i. Gidding Cannot Prevail on his Second and Third Causes of Action Because They Describe Actions Protected by California's Litigation Privilege

In the first instance, the Smith Defendants' conduct at issue in Gidding's second and third causes of action is protected by California's litigation privilege, codified at California Civil Code § 47, which operates as a bar from tort liability.  "[T]he [litigation] privilege [in California] applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action."  *Kimes v. Stone*, 84 F.3d 1121, 1127 (9th Cir. 1996) (internal citations and quotations omitted).  The litigation privilege also applies to statements made by counsel during settlement negotiations.  *Downing v. Zimmerman*, 85 Cal. App. 4th 1400, 1422 (2001); *see also Home Ins. Co. v. Zurich Ins. Co.*, 96 Cal. App. 4th 17, 24 (2002) (privilege applies "in the prelitigation context [] when imminent access to the courts is seriously proposed by a party in good faith for the purpose of resolving a dispute") (internal quotation omitted). Gidding's Second through Fifth Causes of Action as to the Smith Defendants all relate to their actions and statements made in connection with either the resolution of the Glendonbrook Action or the Malpractice Action.  Because this conduct is protected from tort liability under California's litigation privilege, Gidding has not shown and cannot show a likelihood that he will prevail against the Smith Defendants on the merits of his Second and Third Causes of Actions, which

1  sound in tort. *Kimes*, 84 F.3d at 1127 (statements made with some relation to judicial proceedings
2  are "absolutely immune from tort liability"); Cal. Civ. Code § 47(b).

### ii. Gidding Cannot Meet the Elements of a Breach of Contract Claim (Fourth Cause of Action)

Gidding has not shown that he can prevail on his Fourth Cause of Action against the Smith Defendants for breach of contract.  Under California law, a plaintiff states a claim for breach of contract where he alleges: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).  Gidding has not explained how the Smith Defendants violated the Glendonbrook Action settlement agreement so as to entitle him to relief on a breach of contract theory.  Therefore, Gidding has not met his burden of showing that he can prevail on the merits of his Fourth Cause of Action.

### iii. Gidding Cannot Meet the Elements of his Civil Conspiracy Claim (Fifth Cause of Action)

Plaintiff's Fifth Cause of Action for civil conspiracy meets the same fate.  There, Gidding attempts to hold the Defendants liable for: (1) filing an information return that was made in connection with a settlement payment, (2) filing a judgment lien, and (3) allegedly "colluding" to "commit" both acts.  *See* Compl. ¶¶ 97-101.  As discussed in Section D above, Gidding has not pled facts sufficient to give rise to an actionable civil conspiracy claim.  For those reasons, Gidding has not shown that he has probability of prevailing on his civil conspiracy claim as is required by California Code Civil Procedure § 425.16(b)(1).

For the foregoing reasons, Gidding's Second through Fifth Causes of Action against the Smith Defendants are hereby stricken as violating California's Anti-SLAPP statute.

## VI. CONCLUSION

The Court hereby ORDERS:

1. Plaintiff's First Cause of Action for "Filing False and Fraudulent Information Returns with the United States" against all Defendants is DISMISSED WITH PREJUDICE to the extent it relies on Title 26 United States Code Sections 1442 or

   7206 or Title 18 United States Code Section 371.  To the extent Plaintiff's First Cause of Action is brought under Title 26 United States Code Section 7434, it is DISMISSED WITH LEAVE TO AMEND.

2. Plaintiff's Second Cause of Action for Intentional Interference with Contractual Relations is DISMISSED WITH LEAVE TO AMEND as to Defendant Zurich only.  The Second Cause of Action is STRICKEN as to the Smith Defendants, under California Code of Civil Procedure § 425.16, *et seq*.

3. Plaintiff's Third Cause of Action for Inducement of Breach of Contract is DISMISSED WITH LEAVE TO AMEND as to Defendant Zurich.  The Third Cause of Action is STRICKEN as to the Smith Defendants, under California Code of Civil Procedure § 425.16, *et seq*.

4. Plaintiff's Fourth Cause of Action for Breach of Contract is STRICKEN, under California Code of Civil Procedure § 425.16, *et seq*.

5. Plaintiff's Fifth Cause of Action for Civil Conspiracy is DISMISSED WITH LEAVE TO AMEND as to Defendant Zurich, and STRICKEN as to the Smith Defendants under California Code of Civil Procedure § 425.16, *et. seq*.

<u>With regard to the causes of action that the Court has granted Plaintiff leave to amend, specified above, Plaintiff may file an amended complaint **within 35 days of the date of this Order**, but only to the extent that Plaintiff can do so without violating the certification rules set forth in Federal Rule of Civil Procedure 11.</u>  Any amended complaint must not assert the acts alleged in the now-stricken Second through Fifth causes of action as the claimed basis for the Smith Defendants' liability, and those acts cannot be the basis for a civil conspiracy claim.

\\\
\\\
\\\
\\\
\\\
\\\

If Plaintiff does not file an amended complaint by the above deadline, or the amendment fails to correct the pleading deficiencies explained in this order, the case will be subject to dismissal with prejudice in its entirety. Any violation of Rule 11 may also result in commensurate sanctions.

**IT IS SO ORDERED.**

Dated: November 9, 2015

HAYWOOD S. GILLIAM, JR.
United States District Judge