UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN ROBERT GIDDING,<br><br>  Plaintiff,<br><br> v.<br><br>ZURICH AMERICAN INSURANCE COMPANY, et al.,<br><br>  Defendants. | Case No. 15-cv-01176-HSG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS; SETTING CASE MANAGEMENT CONFERENCE**<br><br>Re: Dkt. Nos. 81, 83 |

Before the Court are the motions to dismiss filed by Defendant Glendonbrook Pty Ltd. ("Glendonbrook"), Dkt. No. 81, and Defendant Zurich American Insurance Company ("Zurich"), Dkt. No. 83. Glendonbrook and Zurich (together, "Defendants") move to dismiss the amended complaint filed by Plaintiff John Gidding ("Plaintiff"), Dkt. No. 80 ("Am. Compl."), for failure to state a claim upon which relief can be granted. Plaintiff has filed an opposition to each motion, Dkt. Nos. 85 & 87, and Defendants have each filed a reply, Dkt. Nos. 89 & 91.

For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Zurich's motion to dismiss and **GRANTS** Glendonbrook's motion to dismiss. Because no set of amended factual allegations can cure the defects in the dismissed claims, they are **DISMISSED WITH PREJUDICE**. Because one claim survives dismissal, the Court **SETS** a case management conference for August 16, 2016, at 2:00pm to discuss scheduling in this matter.

**I.   BACKGROUND**

The Court previously granted Defendants' motion to dismiss and special motion to strike Plaintiff's initial complaint and dismissed his claims in part with prejudice and in part without prejudice. *See Gidding v. Zurich Am. Ins. Co.*, No. 15-cv-01176, 2015 WL 6871990 (N.D. Cal. Nov. 9, 2015) (Dkt. No. 77). Plaintiff was granted leave to amend with respect to several of his

claims against Zurich, Dkt. No. 77 at 16-17, but he amended his complaint only as to his claims for (1) filing a false and fraudulent information return under 26 U.S.C. § 7434 and (2) intentional interference with contractual relations. Am. Compl. ¶¶ 40-73. Plaintiff also asserts a breach of contract claim against Glendonbrook without leave to do so. *Id.* ¶¶ 74-80.

The basic premise of Plaintiff's complaint remains unchanged. After Plaintiff lost a large jury verdict to Glendonbrook in January 2010,[1] Plaintiff sued the attorneys who represented him for malpractice. *Id.* ¶¶ 10-14. One of his attorneys and his firm were insured by a subsidiary of Zurich, which began negotiating a settlement with Plaintiff on their behalf. Dkt. No. 83 at 3; *see also* Am. Compl. ¶¶ 16, 36. On or about September 7, 2011, Plaintiff and Zurich reached an agreement in principle to settle the malpractice action for $100,000. *Id.* ¶ 16.

On or about September 15, 2011, Zurich "issued" a $100,000 settlement check that was made payable to Plaintiff and his business, Midshore Marketing LP. *Id.* ¶ 17. Zurich informed Glendonbrook, which placed a judgment lien on the anticipated settlement proceeds. *Id.* ¶ 21. On October 30, 2011, Plaintiff renounced the settlement before he received a final signature page and the check. *Id.* ¶ 22. On November 6, 2011, Zurich sought to enforce the settlement agreement in the state court hearing the malpractice action. *Id.* ¶ 24. On December 19, 2011, the court found the agreement unenforceable. *Id.* ¶ 25. On January 10, 2012, Zurich moved for reconsideration. *Id.* ¶ 27. "On or after January 15, 2012," Zurich filed an information return with the IRS stating that it had paid Plaintiff $100,000 in 2011. *Id.* ¶ 28. And, according to Plaintiff, on May 25, 2012, the state court reversed itself and found the settlement agreement enforceable. *Id.* ¶ 29.

Based on these allegations, Plaintiff again asserts a claim for filing a false and fraudulent information return under 26 U.S.C. § 7434 against Zurich. Plaintiff appears to allege that Zurich knew the information return it filed with the IRS, which stated that it paid him $100,000 in 2011, was false because at the time it was filed the state court had ruled that the settlement agreement awarding that money was unenforceable. *Id.* ¶¶ 40-58. Plaintiff also reasserts a claim under California law for intentional interference with contractual relations against Zurich and a John Doe

---

[1] Plaintiff and Glendonbrook ultimately reached a settlement agreement that stipulated to the entry of an amended judgment. *Id.* ¶ 13.

1  defendant, based on Zurich's failure to inform him that his settlement proceeds would inure to
2  Glendonbrook under the judgment lien. *Id.* ¶¶ 59-73. And Plaintiff asserts a breach of contract
3  claim against Glendonbrook for failing to inform him who would receive the proceeds of the jury
4  verdict against him, which was reduced to an amended judgment by stipulation. *Id.* ¶¶ 13, 74-80.

Zurich again moves to dismiss for failure to state a claim. Glendonbrook moves to dismiss the contract claim asserted against it on the grounds that it was already dismissed with prejudice.

## II.    LEGAL STANDARD

### A.    Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). And even where facts are accepted as true, "a plaintiff may plead [him]self out of court" if he "plead[s] facts which establish that he cannot prevail on his . . . claim." *Weisbuch v. Cnty. of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (quotation marks and citation omitted).

"Pleadings must be construed so as to do justice." Fed. R. Civ. P. 8(e). For that reason, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal

3

pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotations marks and citations omitted). If dismissal is still appropriate, a court "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (quotation marks and citation omitted). Where leave to amend is appropriate, "before dismissing a pro se complaint the district court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992).

### B. Federal Rule of Civil Procedure 9(b)

Federal Rule of Civil Procedure 9(b) heightens these pleading requirements for all claims that "sound in fraud" or are "grounded in fraud." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (citation omitted); Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). "[The Ninth Circuit] has interpreted Rule 9(b) to require that allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993) (internal quotation marks and citation omitted).

In short, a fraud claim must state "the who, what, when, where, and how" of the alleged conduct, *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997), and "set forth an explanation as to why [a] statement or omission complained of was false and misleading," *In re GlenFed, Inc. Secs. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as stated in Ronconi v. Larkin,* 252 F.3d 423, 429 & n.6 (9th Cir. 2001). "Malice, intent, knowledge and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). And where multiple defendants are accused of fraudulent conduct, the plaintiff must identify the role of each defendant in the fraud. *See Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) ("Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.").

### III. REQUESTS FOR JUDICIAL NOTICE

Before turning to the substance of Defendants' motions, the Court addresses Zurich's three requests for judicial notice. These materials include orders from several state court actions that Plaintiff filed, as well as a document associated with the information return Zurich filed with the IRS that Plaintiff attached to a declaration filed in support of his opposition. Dkt. Nos. 84, 86 & 90. Zurich contends that the state court materials are noticeable matters of public record and that the tax document was incorporated by reference into Plaintiff's amended complaint.

#### A. Legal Standard

Generally, courts may not look to materials outside of the complaint to rule on a Rule 12(b)(6) motion. *Swartz*, 476 F.3d at 763. Under the doctrine of judicial notice, however, courts are permitted to establish and rely on "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Proceedings in other courts, including orders, are the proper subject of judicial notice when they are directly related to matters at issue. *See Tigueros v. Adams*, 658 F.3d 983, 987 (9th Cir. 2011) (citations omitted). But it is inappropriate to take judicial notice of another court's orders for the truth of the matters asserted therein. *See Lasar v. Ford Motor Co.*, 399 F.3d 1101, 1117 n.14 (9th Cir. 2005) (declining to take judicial notice of factual findings contained in another court's order "because [defendants were] offering the factual findings contained in the order for the purpose of proving the truth of the factual findings contained therein").

Similarly, under the incorporation by reference doctrine, a court may consider a document extrinsic to the complaint in deciding a Rule 12(b)(6) motion if the document's "authenticity is not contested and the plaintiff's complaint necessarily relies on" it. *Lee v. City of Los Angeles,* 250 F.3d 668, 688 (9th Cir. 2001) (citing *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998)); *see also United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (document may be incorporated by reference "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim"). This doctrine prevents a plaintiff from "deliberately omitting references to documents upon which their claims are based." *Parrino*, 342 F.3d at 705-06. When a document

is incorporated by reference, "the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Ritchie*, 342 F.3d at 908.

### B. Analysis

The Court takes judicial notice of the existence of and orders from previous proceedings involving the parties to the extent that these facts are offered (1) to explain the procedural posture of this action and (2) to establish what rulings the state courts made and when. *See Tigueros*, 658 F.3d at 987. But the Court declines to take judicial notice of orders from state court proceedings to the extent that Defendant offers these materials for the truth of the matters they assert therein. *See Lasar*, 399 F.3d at 1117, n.4.

The Court also declines to find that the tax document Plaintiff has attached to a declaration filed in support of his opposition brief was incorporated by reference into the amended complaint. The parties both describe the document as an IRS Form 1099-MISC 2011 Copy B, which appears to be a document that the filer of an IRS Form 1099-MISC 2011 Copy A, the type of information return that is at issue in this case, would send to a payee as proof of filing. Plaintiff attests that Zurich sent him this document in early 2015 and that it indicates that Zurich declared to the IRS that it had paid him $100,000 in 2011. Dkt. No. 86 ¶ 5 & Ex. D. The document itself contains the date "04/10/2012," but no context is provided as to what the date means. Zurich requests that the Court conclusively determine that this is the date on which it filed the IRS Form 1099-MISC 2011 Copy A with the IRS. Reply at 1-3. Even if it were appropriate to incorporate this document by reference, which is not clear, the document does not conclusively establish that Zurich filed the IRS Form 1099-MISC 2011 Copy A on April 10, 2012. The document simply does not say that, even if it may well prove to be true based on further evidence submitted at a later stage of the case.

### IV. DISCUSSION

The Court now turns to the substance of Defendants' motions to dismiss. With respect to Zurich's motion, the Court finds that Plaintiff has alleged facts sufficient to state a claim under 26 U.S.C. § 7434 for filing a false and fraudulent information return, but he cannot state a claim for intentional interference with contractual relations. That latter claim is dismissed with prejudice.

1    With respect to Glendonbrook's motion, the Court concludes that Plaintiff's breach of contract

2    claim, while not previously stricken, cannot state a claim and is dismissed with prejudice.

### A.     Zurich's Motion to Dismiss

#### 1.     Filing a False and Fraudulent Information Return

Zurich first moves to dismiss Plaintiff's claim under 26 U.S.C. § 7434 for failure to state a claim. Under 26 U.S.C. § 7434(a), a person may not "willfully file[]" with the IRS "a fraudulent information return with respect to payments purported to be made to any other person[.]" For the purposes of § 7434(a), an "information return" refers to an enumerated list of statements filed with the IRS pursuant to the United States Tax Code. *Id.* § 7434(f). The statute authorizes the person on whose behalf the fraudulent information return was filed to bring a civil action for damages against the person filing the return. *Id.* § 7434(a); *Katzman v. Essex Waterfront Owners LLC*, 660 F.3d 565, 569 (2d Cir. 2011). Because a § 7434 claim alleges fraud by definition, Rule 9(b)'s heightened pleading standard applies. *See Kearns*, 567 F.3d at 1125.

As explained above, the basic premise of Plaintiff's § 7434 claim is that the information return Zurich filed "on or after January 15, 2012," stating that Zurich had paid Plaintiff $100,000 in 2011, was willfully false because the state court had found the agreement unenforceable on December 19, 2011. *See* Am. Compl. ¶ 49. Plaintiff alleges that the filing resulted in "an unjust imposition of taxes, penalties and ongoing interest." *Id.* ¶ 56. In its previous order dismissing this claim with leave to amend, the Court explained that the claim failed at least because Plaintiff did not allege facts sufficient to show that Zurich filed a fraudulent information return in a *willful* manner, as opposed to making a good faith error. *See Gidding*, 2015 WL 6871990, at *6.

Zurich now contends that Plaintiff cannot state a claim under § 7434 as a matter of law because his theory of liability is not legally cognizable. Specifically, Zurich argues that an entity filing a tax document with the IRS cannot be found liable for any kind of fraud under the United States Tax Code unless it has the specific intent to avoid a tax burden. Mot. at 5-6. By that logic, Plaintiff cannot state a § 7434 claim against Zurich because Plaintiff does not allege that Zurich lessened its tax burden by filing the information return at issue. In support of that position, Zurich cites *Maciel v. Commissioner of Internal Revenue*, 489 F.3d 1018, 1026-27 (9th Cir. 2007), in

which the Ninth Circuit considered whether a tax penalty levied by the tax court against a taxpayer for underreporting his income was based on sufficient evidence. In coming to an answer, the court defined "tax fraud" as "intentional wrongdoing on the part of the taxpayer with the specific intent to avoid a tax known to be owing." *Id.* at 1027. Zurich argues that this standard controls § 7434.

The Court disagrees. Nothing about *Maciel* addresses the scope of liability under § 7434. *Maciel* simply defines a claim for civil tax fraud predicated on underreporting income, which is not at issue in this case. Conversely, the text of § 7434 does not expressly or even impliedly limit liability to filers who are seeking to avoid a tax burden. *See* 26 U.S.C. § 7434 ("If any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return."). Even if the text were ambiguous, the legislative history of § 7434 makes clear that the statute was enacted to address the fact that "taxpayers may suffer significant personal loss and inconvenience as the result of the IRS receiving fraudulent information returns, which have been filed by persons intent on either defrauding the IRS *or harassing taxpayers*." *Katzman*, 660 F.3d at 569 (quoting H.R. Rep. 104-506, at 37, *reprinted in* 1996 U.S.C.C.A.N. 1143, at *1158 (Mar. 28, 1996)) (emphasis added). Plainly, someone filing a tax document in order to harass a taxpayer need not have the intent of avoiding her own tax burden. Accordingly, the Court finds that Plaintiff has stated a cognizable theory of liability under § 7434.

Zurich next contends that even if Plaintiff states a legally cognizable theory of liability, his § 7434 claim fails because he has not alleged facts sufficient to show either falsity or willfulness.[2] The Court disagrees on both points, notwithstanding its reservations about the ultimate merits of Plaintiff's claim.

With regard to falsity, Plaintiff alleges the following material facts. Upon information and

---

[2] Zurich does not contest that the Form 1099-MISC 2011-A it filed with the IRS regarding its $100,000 malpractice settlement payment is an "information return" within the meaning of 26 U.S.C. § 7434. The Court assumes *arguendo* that the document Zurich allegedly filed qualifies as an information return within the meaning of § 7434, and there is nothing to suggest that it does not qualify. *See* 26 U.S.C. § 7434(f) (qualifying information returns are listed in § 6724(d)(1)(A)); *id.* § 6724(d)(1)(A) (qualifying returns include those filed under § 6041(a)); *id.* § 6041(a) (payments exceeding $600 in a calendar year in the course of trade or business must be reported to the IRS).

belief, Zurich "issued" a $100,000 check on or around September 15, 2011, made payable to him and his business, but sent the check to a "John Doe" instead. Am. Compl. ¶¶ 17, 26. Then, on December 19, 2011, the state court hearing the malpractice action found the settlement agreement underlying that $100,000 payment to be unenforceable. *Id.* ¶ 25. But, on information and belief, "on or after December 19, 2011," Zurich directed John Doe to cash the check anyway. *Id.* ¶ 26. Given that the settlement agreement "was ruled unenforceable on December 19, 2011" and "was not ruled enforceable until May 25, 2012," Plaintiff asserts that "Zurich had no good-faith reason to believe that they had paid Gidding $100,000 in 2011" and the information return Zurich filed "on or after January 15, 2012" stating the contrary was false. *Id.* ¶ 49.[3] Instead, the $100,000 was allegedly not actually transferred to Glendonbrook, Plaintiff's creditor, until June 2014. *Id.* ¶ 70.

Based on these factual allegations in the complaint and the facts subject to judicial notice, the falsity question thus boils down to whether Plaintiff can (and did) sufficiently allege that the information return that Zurich filed inaccurately stated the date on which he earned the $100,000 in settlement income. In other words, did Zurich's issuance of the settlement check in 2011 to a John Doe constitute a "payment" to Plaintiff in that year, thereby authorizing Zurich to file an IRS Form 1099-MISC 2011 Copy A? Or should Zurich have allocated the $100,000 payment to Plaintiff in some later year, after the Superior Court (in 2012) or the Court of Appeals (in 2014) found the agreement enforceable, or after the money was actually transferred to Glendonbrook?

In its moving papers, Zurich acknowledges that there could be a "potential issue" regarding "whether it was appropriate for Zurich to report [the settlement income] earned in 2011." Mot. at 9. But Zurich maintains that under the "doctrine of constructive receipt in the tax law context," it was truthful to report the settlement income as earned in 2011. *Id.* Specifically, Zurich points to Plaintiff's allegation that the $100,000 check was issued in September 2011, Am. Compl. ¶ 17, to argue that, because the settlement agreement was ultimately found to be enforceable, "[Plaintiff] earned the $100,000 in 2011, when the agreement was negotiated." Mot. at 9-10.

---

[3] Judicially noticeable records from the underlying state court action conclusively establish that the state court actually found the agreement to be enforceable much earlier, on February 21, 2012. *See* Dkt. 90-1.

In support of this position, Zurich relies primarily on a United States Treasury Department regulation entitled "Constructive Receipt of Income." Mot. at 9 (citing 26 C.F.R. § 1.451-2(a)). The regulation provides that "[i]ncome although not actually reduced to a taxpayer's possession is constructively received by him in the taxable year during which it is credited to his account, set apart for him, or otherwise made available so that he may draw upon it during the taxable year if notice of intention to withdraw had been given." The next sentence of the regulation, however, which Zurich does not quote, explains that "income is not constructively received if the taxpayer's control of its receipt is subject to substantial limitations or restrictions." 26 C.F.R. § 1.451-2(a).

While it is possible that discovery will support Zurich's claim that the $100,000 payment was properly attributable to Plaintiff in 2011, the Court cannot find that Plaintiff's allegations and judicially-noticeable facts conclusively establish constructive receipt as a matter of law. Neither the complaint nor any facts subject to judicial notice establish that any settlement money was paid to Plaintiff, "credited to" his account, or paid or credited to someone else to discharge his debt to Glendonbrook in 2011 in a manner not "subject to substantial limitations or restrictions." *See id.* While it is true that Plaintiff claims a "John Doe" cashed the check "issued" by Zurich "on or after December 19, 2011," *id.* ¶ 27, he alleges that John Doe only "disbursed . . . the above referenced $100,000 to an heir, successor or assign of Glendonbrook," Plaintiff's creditor, "on or after June 2014." *Id.* ¶ 70. Drawing all reasonable inferences in Plaintiff's favor, as the Court must, this allegation makes it impossible for the Court to conclude that there was no substantial limitation or restriction in 2011 on Plaintiff's receipt as a matter of law. And Zurich cites no authority to support its argument that Plaintiff earned the $100,000 in 2011 merely by negotiating the settlement. Am. Compl. ¶ 70. Without any support for that claim, the Court must find that the complaint has adequately alleged that the $100,000 was not correctly attributed as having been paid to Plaintiff in 2011.

The next issue in dispute is whether Plaintiff has pled facts sufficient to show that Zurich willfully filed the allegedly false information return. Willfulness in the context of § 7434 means "intentional wrongdoing." *Gidding*, 2015 WL 6871990, at *6 (quoting *Vandenheede v. Vecchio*, 541 Fed. Appx. 577, 580 (6th Cir. 2013) ("[B]ecause [the plaintiff's] § 7434 claim alleges fraud,

her pleadings must do more than establish an accounting mistake.")). And "although Rule 9(b) permits knowledge and intent to be pled in general terms, a plaintiff still must allege sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind." *San Francisco Tech., Inc. v. GlaxoSmithKline LLC*, No. 5:10-CV-03248, 2011 WL 941096, at *3 (N.D. Cal. Mar. 16, 2011). Zurich alleges that Plaintiff has not stated and cannot state a set of facts that are sufficient to show it intentionally filed the allegedly false tax return.

Construing the complaint liberally, as the Court must in pro se cases, Plaintiff's allegations that Zurich's actions were willfully fraudulent are sufficient to survive a motion to dismiss. It is reasonable to infer that Zurich knew it had a legal duty to file an accurate tax return for business payments over $600, but "on or after January 15, 2012" knowingly made a false statement in a tax return that it had paid Plaintiff $100,000 in 2011. Am. Compl. ¶ 51. Specifically, Plaintiff alleges that Zurich misled him during settlement negotiations about Glendonbrook's intention to file a lien against the settlement proceeds. *Id.* ¶¶ 44-48. Plaintiff further alleges that Zurich concealed the means by which the check was cashed, *id.* ¶ 50, and that Zurich did not notify him that it had filed the tax return until October 2014, while still not providing him a copy of the Copy B form at that time. *Id.* ¶ 32. Based on the allegations, it is possible that Zurich filed the information return in the window during which the agreement had been found to be unenforceable. That is sufficient at this stage to allege willful wrongdoing under § 7434. Again, it may well be difficult for Plaintiff to produce evidence at summary judgment establishing that Zurich willfully lied when it attributed the $100,000 payment to 2011, as opposed to making that statement in good faith. But the Court cannot presume that Plaintiff's allegations to the contrary are false at this stage of the proceedings. Accordingly, Zurich's motion to dismiss is denied as to Plaintiff's § 7434 claim.

To be clear, the Court notes that it is generally proper for a judgment creditor to place a lien on a judgment debtor's assets, and that assets garnished in this manner constitute income to the debtor. 26 C.F.R. § 1.451-2(a); *Baxter v. Comm'r of Internal Revenue*, 816 F.2d 493, 494 (9th Cir. 1987). If Plaintiff is claiming that he could not incur income tax liability on the $100,000 settlement if Zurich transmitted that money directly to Glendonbrook in partial satisfaction of the judgment against him, *see* Dkt. No. 84-2 (December 16, 2011 assignment order), that argument

appears legally unsustainable. In the Court's view, the sole relevant issues going forward are: (1) *when* Plaintiff incurred income tax liability for the $100,000 settlement payment (in 2011 or at some later time); and (2) if the answer is not 2011, whether Zurich acted in a willfully fraudulent manner in filing the return attributing the $100,000 payment to Plaintiff in 2011.

Further, the Court notes that Plaintiff's damages on his § 7434 claim appear limited to the greater of $5,000 or the total of actual damages, plus reasonable attorneys' fees and costs. *See* 26 U.S.C. § 7434(a). Accordingly, even if Plaintiff prevails on the merits of his claim, his actual damages appear to be limited to the harm sustained *solely* by virtue of Zurich's information return assigning the $100,000 settlement payment to him in 2011 rather than a different year. Plaintiff has submitted a document which appears to suggest that as of November 4, 2013, his actual economic damages totaled just over $173 (a $100.49 failure-to-pay penalty and interest charges of $72.58). *See* Dkt. No. 20-10. If that is true, Plaintiff should understand that his maximum total economic recovery in this action could be relatively small.

### 2. Intentional Interference with Contractual Relations

Zurich also moves to dismiss Plaintiff's claim of intentional interference with contractual relations for failure to state a claim upon which relief can be granted.

To state a claim for intentional interference with contractual relations under California law, a plaintiff must allege the following elements: "(1) a valid contract between plaintiff and a third party; (2) defendants' knowledge of the contract; (3) defendants' intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Guidiville Band of Pomo Indians v. NGV Gaming, Ltd.*, 531 F.3d 767, 774 (9th Cir. 2008). "California law has long recognized that the core of intentional interference business torts is interference with an economic relationship by a third-party stranger to that relationship, so that an entity with a direct interest or involvement in that relationship is not usually liable for harm caused by pursuit of its interests." *Marin Tug & Barge, Inc. v. Westport Petroleum, Inc.*, 271 F.3d 825, 832 (9th Cir. 2001).

The premise of Plaintiff's claim is that Zurich interfered with the settlement agreement that it entered into with him by failing to disclose that it had notified Glendonbrook about their

ongoing settlement negotiations. Am. Compl. ¶ 59. In its previous order, the Court dismissed this claim because Plaintiff had not alleged facts sufficient to show Zurich had the requisite intent to breach or disrupt the settlement agreement. Dkt. No. 77 at 11. To the contrary, the facts Plaintiff alleged showed that Zurich had attempted to force compliance with the settlement agreement. *Id.*

In light of Plaintiff's amended complaint, the Court concludes that Plaintiff cannot ever state a claim for intentional interference with contractual relations against Zurich regarding the settlement agreement. First, Zurich was a party to the settlement agreement with which Plaintiff alleges it interfered. California law does not permit a claim for contractual interference against a party to the contract at issue. *Marin Tug & Barge*, 271 F.3d at 832 ("[T]he core of intentional interference business torts is interference with an economic relationship by a third-party stranger to that relationship[.]"). Second, the amended complaint states facts that would suggest only that Zurich was trying to enforce compliance with the settlement agreement, not a breach or disruption. Third, there was no valid contract in effect when Zurich notified Glendonbrook about the fact that settlement negotiations were ongoing. Without a valid contract, there can be no disruption. *See Guidiville Band of Pomo Indians*, 531 F.3d at 774. None of these three defects is curable given the facts Plaintiff already has pled.

Accordingly, Zurich's motion to dismiss is granted as to Plaintiff's intentional interference with contractual relations claim. The claim is dismissed with prejudice both as to Zurich and the John Doe defendant that Plaintiff names under this claim as Zurich's agent. Even if the John Doe defendant is legally distinct from Zurich in this context, no set of facts could show that this person intentionally interfered with the settlement agreement merely by accepting a check from Zurich.

**B.     Glendonbrook's Motion to Dismiss**

Glendonbrook moves to dismiss Plaintiff's breach of contract claim as already decided and stricken from the initial complaint and for failure to state a claim. The first question is whether the Court already dismissed and/or struck this claim from Plaintiff's initial complaint. If not, the question is whether Plaintiff has stated a claim for breach of contract against Glendonbrook.

Plaintiff's original breach of contract claim asserted that Glendonbrook had breached its settlement agreement with Plaintiff (entered into after the trial that Plaintiff lost) by placing a lien

13

on Plaintiff's proceeds from his settlement agreement with Zurich. Dkt. No. 1, Ex. A ¶¶ 88-96. The Court struck that claim under California Code of Civil Procedure 423.16, known as the anti-SLAPP statute, because Glendonbrook's settlement communications were protected activity and Plaintiff had no reasonable probability of prevailing on his claim. Dkt. No. 77 at 16. Plaintiff's amended complaint alleges that Glendonbrook breached its settlement agreement with Plaintiff by failing to inform him of the name of the entity that received settlement payments under the agreement. Am. Compl. ¶¶ 13, 75-80. The Court finds that this is indeed a different claim.

In the interest of resolving this claim conclusively, the Court will assess whether these allegations state a breach of contract claim against Glendonbrook, even though Plaintiff was not granted leave to amend his complaint to add this new claim. *See* Dkt. No. 77. Under California law, a plaintiff states a breach of contract claim where he alleges: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). To determine whether Plaintiff has stated a claim, the Court looks to the settlement agreement between Plaintiff and Glendonbrook, s*ee* Dkt. No. 82 ¶ 3 & Ex. 2, which was incorporated by reference in the complaint. *See Ritchie*, 342 F.3d at 908 (a document is incorporated by reference when it "forms the basis of the plaintiff's claim").

Upon review of the settlement agreement, the Court finds that it contains no term requiring Glendonbrook to notify Plaintiff as to the ultimate recipient of settlement funds. The only term remotely relating to this issue provides that the agreement "shall inure to the benefit of and be binding on each of the Parties hereto *and on their successors, heirs and assigns*." Dkt. No. 82, Ex. 2 ¶ II.P (emphasis added). But this term did not impose on Glendonbrook an obligation to notify Plaintiff about whether its successors, heirs, and assigns received settlement funds. Accordingly, Plaintiff cannot assert a breach of contract claim on this basis, and based on the plain language of the contract and the facts Plaintiff has already pled, this defect cannot be cured.

Accordingly, the Court grants with prejudice Glendonbrook's motion to dismiss Plaintiff's breach of contract claim.

///

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Zurich's motion to dismiss. Plaintiff's claim for intentional interference with contractual relations against Zurich is **DISMISSED WITH PREJUDICE**. Additionally, the Court **GRANTS** Glendonbrook's motion to dismiss. Plaintiff's breach of contract claim against Glendonbrook is **DISMISSED WITH PREJUDICE**. The Court **SETS** a case management conference for August 16, 2016, at 2:00pm to discuss scheduling in this matter. The parties may appear by telephone.

**IT IS SO ORDERED.**

Dated: 8/2/2016

HAYWOOD S. GILLIAM, JR.
United States District Judge